**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

ALTAGRACIA MARIANO DE MOTA,

                       Plaintiff,

       -against-

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                 Defendant.

-------------------------------------------------------X

**OPINION & ORDER**

15 Civ. 6855 (PED)

## I.    INTRODUCTION

      Plaintiff Altagracia Mariano De Mota ("Plaintiff," or "Claimant,") brings this action pursuant to 42 U.S.C. § 405(g) challenging the decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying Plaintiff's application for disability insurance benefits. R. 10-12. The matter is before me pursuant to a Notice, Consent and Reference of a Civil Action to a Magistrate Judge entered April 8, 2016. Dkt. 24. Presently before this Court are Defendant's motion for remand and Plaintiff's cross motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Dkts. 26 (Defendant's motion), 27 (Defendant's memorandum of law[2]), 30 (Plaintiff's cross motion), 31 (Plaintiff's

---

[1]     On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security and is substituted for Carolyn W. Colvin as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2]     Defendant's Memorandum of Law in Support of the Commissioner's Motion for Remand, ("Def. Mem.").

memorandum of law in support[3]), 37 (Defendant's response[4]), 38 (Plaintiff's reply[5]).

Both parties request that the case be remanded to the Social Security Administration.
Plaintiff seeks judgment on the pleadings and remand solely for the calculation of benefits.
Dkts. 31, 37.  The Commissioner requests remand for further administrative proceedings
concerning Plaintiff's eligibility for benefits.  Dkts. 27, 38.  For the reasons set forth below,
Defendant's motion for remand for additional administrative proceedings is **GRANTED,** and
Plaintiff's motion for judgment on the pleadings and remand for the calculation of benefits is
**DENIED**.  The Court further directs that the remand will be assigned to a different
administrative law judge ("ALJ").

## II.    BACKGROUND

The following facts are taken from the administrative record ("R.") of the Social Security
Administration, Dkt. 11, filed by Defendant in conjunction with the Answer.  Dkt. 10.

### A.    Application History

On October 20, 2011, Plaintiff filed a Title II application for a period of disability and
disability insurance benefits, R. 223-232 (application for disability benefits) and a Title XVI
application for Supplemental Security Income ("SSI").  R. 233-238 (application for SSI

---

[3]    Plaintiff's Memorandum of Law in Support of Plaintiff's Cross-Motion for
Judgment on the Pleadings and in Oppostion [sic] to Defendant's Motion for Judgment on the
Pleadings, ("Pl. Mem.").

[4]    Defendant's Memorandum of Law in Response to Plaintiff's Cross-Motion for
Judgment on the Pleadings and in Further Support of the Commissioner's Motion for Remand,
("Def. Reply").

[5]    Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Motion
for Judgment on the Pleadings and in Opposition to Defendant's Motion for Remand, ("Pl.
Reply").

benefits).  Her applications were denied.  R. 123-130.  Plaintiff timely requested a hearing before

an ALJ on February 14, 2012.  R. 131.  Plaintiff appeared before ALJ Seth I. Grossman

represented by counsel, Eliana Robles, on December 28, 2012, R. 41-72, and represented by

counsel, Ruth Axelrod on June 14, 2013.  R. 73-120.  On March 11, 2014, the ALJ issued an

unfavorable decision.  R. 10-12.  The ALJ's decision became the Commissioner's final decision

when the Appeals Council denied Plaintiff's request for review on July 16, 2015.  R. 1-4.

Plaintiff timely filed this action on August 29, 2015.  Dkt. 1.

      Plaintiff was born in Santo Domingo on March 12, 1955.  R. 266.  From 1998 to 2008,

Plaintiff worked for Mana Products in the Bronx.  R. 271.  While at Mana Products, Plaintiff

worked in the machine room, on the line, and in packing.  R. 111.  From 2008 through 2011,

Plaintiff worked as a childcare provider for four children.  R. 258.  During the school year, she

would work four hours a day and during the summer she would work eight hours a day.  R. 258.

In her application for disability insurance, Plaintiff alleged that she had been disabled since

September 30, 2010 (the "Alleged Disability Onset Date").  R. 266.

### B.    Plaintiff's Hearing Testimony

      On December 28, 2012, Plaintiff appeared before the ALJ for her first administrative

proceeding.  R. 41-72.  Plaintiff testified that she had two children, a daughter and a son, but

lived alone.  R. 57.  During questioning by her counsel, Plaintiff testified that she had stopped

working because of her psychiatric problems, because she was hearing voices, walking with

shadows, and other "things like that."  R. 66.  Plaintiff testified to undergoing psychiatric

treatment to address her suicidal thoughts and memory problems.  R. 67.

      At Plaintiff's second hearing, held on June 14, 2013, R. 73-120, Plaintiff testified further

about her visual and auditory hallucinations.  R. 78-79.  For much of Plaintiff's second hearing,

the ALJ questioned a court-appointed Medical Expert, Dr. Michael Friedman, about his evaluation of Plaintiff's medical record. R. 87-94. At the end of the hearing, the ALJ questioned a vocational expert, Raymond Cestar, about Plaintiff's past relevant work, and Plaintiff's work limitations. R. 110-111; 113-119.

## III.   LEGAL STANDARDS

### A. Standard of Review

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Rather, the court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The substantial evidence standard is "even more" deferential than the 'clearly erroneous' standard. *Brault v. Social Sec. Admin*, 683 F.3d 443, 448 (2d Cir. 2012). The reviewing court must defer to the Commissioner's factual findings, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record,

4

including contradictory evidence and evidence from which conflicting inferences can be drawn."

*Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). "When there

are gaps in the administrative record or the ALJ has applied an improper legal standard," or

when the ALJ's rationale is unclear in light of the record evidence, remand to the Commissioner

"for further development of the evidence" or for an explanation of the ALJ's reasoning is

warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

**B. Statutory Disability**

A claimant is disabled under the SSA when he or she lacks the ability "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). In

addition, a person is eligible for disability benefits under the SSA only if:

> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.
> *Id.* § 423(d)(2)(A).

A claimant's eligibility for SSA disability benefits is evaluated pursuant to a five-step

sequential analysis:

1.  The Commissioner considers whether the claimant is currently
    engaged in substantial gainful activity.

2.  If not, the Commissioner considers whether the claimant has a
    "severe impairment" which limits his or her mental or physical
    ability to do basic work activities.

3.  If the claimant has a "severe impairment," the Commissioner must
    ask whether, based solely on medical evidence, claimant has an

impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.      If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.      If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). The claimant bears the burden of proof as to the first four steps of the process. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). If the claimant proves that his impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth and final step. *See id.* At the fifth step, the Commissioner must prove that the claimant is capable of obtaining substantial gainful employment in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## C. Remand for Administrative Proceedings

Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (made applicable to Title XVI by 42 U.S.C. § 1383(c)(3)); *Shalala v. Schaefer*, 509 U.S. 292, 297 (1993); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). A remand for further proceedings may be ordered pursuant to the fourth sentence of 42 U.S.C. § 405(g) in cases where the Commissioner "has failed to provide a full and fair hearing, to make explicit findings, or to

have correctly applied the law and regulations." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (U.S. 1991); *see Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

### D.  Remand for Calculation of Benefits

Where the evidence shows overwhelming proof of disability, and no purpose would be served by a remand for a new hearing, the Court has the authority to reverse for calculation of benefits when the record provides "persuasive evidence of total disability that render[s] any further proceedings pointless." *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 590-91 (S.D.N.Y. 2000). Further, if the ALJ's decision is based upon an error of law and "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (citing *Havas v. Bowen*, 804 F. 3d 783, 786 (2d Cir. 1986)).  In such a case, a remand solely for the purpose of calculating benefits is appropriate. *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998); *Parker v. Harris*, 626 F. 2d, 225, 235 (2d Cir. 1980).

### E.  Duty to Evaluate Medical Opinion Evidence

An ALJ is obliged to consider medical opinions on a claimant's functioning and is tasked with reaching an residual functional capacity assessment based on the record as a whole.  20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").  It is the Commissioner's role to weigh medical opinion evidence and to resolve conflicts in that evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

### F. The Treating Physician Rule

When considering the medical opinion record evidence, the ALJ must give deference to the opinions of a claimant's treating physicians.  A treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. § 416.927(c)(2); *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Before an ALJ can give a treating physician's opinion less than controlling weight, the ALJ should consider the following factors to determine the amount of weight the opinion should be given: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical support for the treating physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) the physician's level of specialization in the area, and (6) other factors that tend to support or contradict the opinion.  20 C.F.R. § 416.927(c)(2)-(6); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).  Although the foregoing factors guide an ALJ's assessment of a treating physician's opinion, the ALJ need not expressly address each factor.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.")(citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam)).  As long as the ALJ provides "good reasons" for the weight accorded to the treating physician's opinion and the ALJ's reasoning is supported by substantial evidence, remand is unwarranted.  *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

## IV.    THE ALJ'S DECISION

The ALJ issued a decision on March 11, 2014 following the standard five-step inquiry used for determining disability. R. 17-18. In the first step of the inquiry, the ALJ determined that Plaintiff had not performed substantial gainful activity since the September 30, 2010 alleged onset date. R. 18.

At step two, the ALJ next found that Plaintiff's medical issues — major depressive disorder and psychotic disorder — rose to the level of "severe" causing "more than minimal functional limitations." R. 18-19.

At step three, further considering the medical severity of Plaintiff's impairments, the ALJ decided that Plaintiff did not meet or medically equal the "Appendix 1" impairments, which compel a finding of disability. R. 16.

The ALJ also found that the severity of the claimant's mental impairments considered singly and in combination did not meet or medically equal the criteria of listing 12.03 or 12.04. R. 19-20.

Listing 12.03 details the level of severity that a claimant must show to prove the claimant's mental impairment rises to the level of or schizophrenic or psychotic disorder. Paragraph B of Listing 12.03 of Appendix 1 to 20 C.F.R. Part 404, Subpart P, requires that the mental impairment result "in at least two of the following: [1] marked restriction of activities of daily living; [2] marked difficulties in maintaining social functioning; [3] marked difficulties in maintaining concentration, persistence, or pace; or [4] repeated episodes of decompensation, each of extended duration." *Id.*

Listing 12.04 details the level of severity that a claimant must show to prove the claimant's mental impairment rises to the level of an affective disorder. Paragraph B of Listing

9

12.04 of Appendix 1 to 20 C.F.R. Part 404, Subpart P, requires that the mental impairments result "in at least two of the following: [1] marked restriction of activities of daily living; [2] marked difficulties in maintaining social functioning; [3] marked difficulties in maintaining concentration, persistence, or pace; or [4] repeated episodes of decompensation, each of extended duration." *Id.* The ALJ noted that a "marked limitation" is defined as one that is more moderate but less than extreme." R. 19. Additionally, the phrase "repeated episodes of decompensation, each of extended duration," requires that the claimant have "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." R. 19. Paragraph C of Listing 12.04 requires that the claimant show a "[m]edically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities," plus one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Appendix 1, Listing 12.04(C).

The ALJ found that the evidence did not establish the presence of "paragraph C" criteria but did not elaborate any further. R. 20. In determining whether Plaintiff met the criteria of paragraph B, the ALJ found that Plaintiff's functional limitations consisted of "mild restrictions" in activities of daily living, "mild difficulties" in social functioning, and "moderate difficulties" in sustaining concentration, persistence and pace. R. 19. "As for episodes of decompensation,"

the ALJ found that "the claimant has experienced no episodes of decompensations, which have been of extended duration." R. 20.

Before moving to step four, the ALJ noted that the limitations in paragraph B are used to rate the "severity of mental impairments at steps 2 and 3 of the sequential evaluation process." R. 20. The ALJ further observed that the mental residual functional capacity assessment used at steps four and five requires "a more detailed assessment" involving itemization of the "various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments. (SSR 96-8p)." R. 20.

At step four, the ALJ considered "the entire record" and made a finding about Plaintiff's residual functional capacity. R. 20. The ALJ found that "the claimant has the residual functional capacity to perform a full range of work at all exertional levels, so long as it is limited to simple repetitive tasks. She can maintain concentration and attention, keep a regular schedule, and understand and carry out simple job tasks, all within normal work expectations." R. 20.

In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence..." R. 20. The ALJ also considered Plaintiff's testimony that "she worked as a childcare provider, primarily baby-sitting for her grandchildren. She stopped working after she began to hear voices and forgot to pick up the children from school on several occasions... She testified that she hears voices all the time. In fact, the claimant indicated that the voices were asking her what she was doing at the hearing. She described the voices as "friends," whom she can actually see. They are always with her and she is never by herself. When asked if the voices ever tell her to do things, she stated that they told her to throw herself off the roof, twice about 3 weeks earlier. The claimant also reported that her daughter helps her bathe because she fears

11

that the voices may jump into the bath and knock her down.  She states that her daughter helps her with other personal care activities, as well as household chores and shopping.  She indicated that her daughter accompanied her to the hearing, but could not recall whether they came by bus or train." R. 21.

The ALJ did "not find the claimant's testimony credible" because the "claimant's hearing statements regarding her work history, her symptomatology and functional limitations are inconsistent with the testimony that she provided during the consultative examinations and during other routine examinations." R. 21.  On this point, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. 17.

In making the residual functional capacity determination, the ALJ also considered the notes and opinions of Plaintiff's treating social worker, Vera Tapia, who reported that Plaintiff had been in outpatient psychiatric treatment since June 2011 for symptoms of depression and Plaintiff's treating psychiatrist, Celia Purugganan, M.D., at Lincoln Hospital Mental Hygiene Clinic. R. 21-22.  The ALJ did not note how much weight he allotted to the Plaintiff's treating psychiatrist's opinion.  The ALJ's decision then considered the notes and opinions of Consultative Examiner, David Mahony, Ph.D. and Medical Expert, Michael Friedman, M.D. and found "that in their assessments, both opinion sources relied primarily on the claimant being credible and providing accurate and truthful testimony.  The doctors' functional assessments were based on the oral history and the claimant's subjective complains, and less on the objective findings in the record, or in the case of Dr. Mahony, his own mental status evaluation findings."

R. 22-23.  As a result, the ALJ accorded Dr. Mahony and Dr. Friedman's opinions "no weight"
in his disability determination.

After making the above findings, the ALJ considered whether the claimant would be able
to perform any past relevant work.  R. 24 (citing 20 C.F.R. §§ 404.1565, 416.965).  The ALJ
found that Plaintiff "is capable of performing past relevant work as a childcare provider, SVP-3
medium work, [301.677-010,] as a line worker, SVP-2 light work, and as a packer, SVP-2
medium work [301.677-000 because t]his work does not require the performance of work-related
activities precluded by the claimant's residual functional capacity."  R. 24.

Following these conclusions, the ALJ reached the end of the five-step process,
determined that Plaintiff was not disabled, and denied her application for benefits.  R. 20-21.

## V.   DISCUSSION

Defendant seeks remand of the ALJ's final decision for further administrative
proceedings because the ALJ improperly evaluated the medical source opinion evidence of
record.  Def. Mem. at 1.  Plaintiff argues that "reversal for the sole purpose of calculation of
benefits is the only appropriate remedy because proper application of the law to the evidence
demonstrates conclusively that [Plaintiff] is disabled."  Pl. Mem. at 1.

In particular, Defendant argues that it is not clear how the ALJ arrived at a residual
functional capacity finding because he failed to explain the weight he accorded to most medical
opinions in the record, including Plaintiff's treating psychiatrist, Dr. Celia Purugganan,
Plaintiff's treating social worker, Giselle Gavilanes, Federal Employment and Guidance Services
("FEGS") physician, Dr. Charles Pastor, Consultative Psychiatric Examiner, Dr. Howard Tedoff,
and the State Agency Consultant, Dr. T. Harding.  Def. Mem. 4-9.  Consequently, Defendant
argues, remand for further administrative proceedings is necessary to properly evaluate the

medical opinion evidence. Def. Mem. at 3-9. Plaintiff contends that even though the ALJ failed to evaluate any medical opinion evidence, including Plaintiff's treating psychiatrist's opinion, there is "overwhelming and uncontradicted evidence of disability" such that the only appropriate remedy is remand for the calculation of benefits. Pl. Mem. at 13-18.

### A. Treating Physician Rule

Defendant argues that remand for further administrative proceedings is appropriate because the ALJ violated the treating physician rule by failing to award any weight to the opinion of Plaintiff's treating psychiatrist, Dr. Celia Purugganan of Lincoln Mental Hygiene Clinic, and failing to provide any reasons for dismissing her opinion. Def. Mem. at 3. Plaintiff asks that the Court simply award Plaintiff's treating psychiatrist's controlling weight because the medical evidence consistently supports a finding that Plaintiff is disabled. Pl. Reply at 2-4.

Social Security regulations provide that a treating source's opinion on the nature and severity of an individual's impairment will be given "controlling weight" if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Social Security Ruling (SSR) 96-2p, 61 F.R. 34490, 34490-91 (July 2, 1996); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d. Cir. 2002). If the ALJ determines the opinions are not due controlling weight, he must give "good reasons" for the weight given to the opinion, and consider the following factors:

1.  the frequency of examination and the length, nature, and extent of the treatment relationship,
2.  the evidence supporting the treating physician's opinion,
3.  the consistency of the opinion with the record as a whole,
4.  whether the opinion is from a specialist, and

5.     any other factors brought to light that tend to contradict the treating
physician's opinion.

20 C.F.R. § 404.1527(c)(2)-(c)(6); *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do

not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight

given to a treating physicians opinion, and we will continue remanding when we encounter

opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a

treating physician's opinion.").  It is the ALJ's role to weigh medical opinion evidence and to

resolve conflicts in that evidence.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir.

2012); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical

evidence are for the [ALJ] to resolve.").

Here, there is no indication that the ALJ adhered to the treating physician rule set forth in

the Social Security Regulations.  20 C.F.R. § 404.1527(c)(2).  After finding that Plaintiff's

testimony was not credible, the ALJ considered certain medical opinion evidence but summarily

rejected those opinions for being based, in part, upon Plaintiff's testimony.  R. 21-25.  In bold-

faced underlined type font, he wrote, "**[b]ecause I find the claimant to be not credible, I also**

**do not credit the opinions of the experts who relied, at least in part, on her presentation**

**and testimony.**"  R. 24 (emphasis in the original).  Plaintiff's treating psychiatrist was included

in this group of discredited experts.  Although the ALJ considered some of the contents of

Plaintiff's treating psychiatrist's opinions, he did not consider the frequency of examination and

the length, nature, and extent of the treatment relationship, the evidence supporting the treating

physician's opinion, nor whether the opinion was from a specialist.  R. 21; 20 C.F.R. §

404.1527(c)(2); *see also Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (the ALJ cannot ignore

opinions even where those opinions would not be entitled to controlling weight).  Indeed, the

ALJ failed to evaluate Plaintiff's treating physician's opinions at all.

The Court declines Plaintiff's request to have the Court determine *de novo* whether Plaintiff is disabled by substituting its own judgment and deciding what weight Plaintiff's treating psychiatrist's opinion should have been awarded. *Lopez v. Comm'r of Soc. Sec.*, 622 Fed. App'x. 59, 60 (2d Cir. 2015) (summary order) (the Court "may not substitute its own judgment for that of the [ALJ], even if it might justifiably have reached a different result upon a de novo review.") (citing *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). Where the proper legal standards have not been applied and "might have affected the disposition of the case, [the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Master Baye Balah Allah v. Colvin*, No. 15 Civ. 6099, 2016 U.S. Dist. LEXIS 176858, at *44 (S.D.N.Y. Dec. 20, 2016) (citing *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004)). It was the ALJ's duty to determine whether Plaintiff was disabled. Thus, the ALJ's failure to apply the treating physician rule both undermines his factual findings and prevents the Court from fulfilling its duty to review the decision.

Accordingly, the ALJ's failure to apply the treating physician rule warrants remand.

**B. Scope of Remand**

Both parties agree that the case should be remanded but disagree as to the scope of the remand. Defendant requests that the case be remanded for additional administrative proceedings, while Plaintiff asserts that the only appropriate remedy is remand for the calculation of benefits. In support of Plaintiff's request that this case be remanded solely for the calculation of benefits, Plaintiff argues that the record is conflict-free[6] and, even without the ALJ's evaluation of the

---

[6]     Plaintiff relies heavily on Dr. Friedman's finding that "the record as a whole shows that [Plaintiff's] condition meets listing 12.04 and that she has marked impairments in

treating source opinion evidence, it supports a finding of Plaintiff's disability. Pl. Mem. at 16-18. The Court does not agree.

As the Second Circuit has explained, reversal for calculation of benefits is appropriate *only* when there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision. . . ." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (remand for calculation of benefits only appropriate where record contains "persuasive proof of disability" and remand for further evidentiary proceedings would serve no purpose). Moreover, "the ultimate determination of whether a person has a disability within the meaning of the Act belongs to the [ALJ]." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). The ALJ did not give more than "no weight" to any opinion considered in the decision, thus, it is not clear how the ALJ could have made a residual functional capacity finding. R. 23-24. The ALJ failed to apply the law and evaluate the record as required by Social Security regulations. Despite Plaintiff's claim otherwise, it is not clear that the application of the correct legal principles to this record could lead to only one conclusion.

Plaintiff's focus on her treating psychiatrist's positive mental status findings overlooks the "unremarkable" findings in her own treating psychiatrist's opinions. R. 492-97, 514-16, 520-28, 603-08, 839-42, 1061-65. While Plaintiff's treating psychiatrist occasionally found that Plaintiff's thought process was characterized by flight of ideas, loose associations, delusions, paranoid ideations and obsessions, R. 503, 525-25, her treating psychiatrist also found that

---

social functioning, and concentration and moderate impairment in activities in daily living." Pl. Mem. at 20; Pl. Reply at 3. But Dr. Friedman only made this declaration by ignoring the inconsistencies in the record, R. 89-90, 97-100, 107-08 ("Well, basically just sort of ignoring the inconsistencies...").

Plaintiff improved while on medication, R. 494, 501, and on other occasions, such as January 11,

2012, February 23, 2012, and August 26, 2013, Plaintiff's psychiatrist observed that Plaintiff had

normal thought process, cognitive function, and attention. R. 492-97, 1067-68. In some

instances, Plaintiff's treating psychiatrist's opinion about Plaintiff's ability to engage in activities

of daily living conflicts with the record evidence about Plaintiff's daily activities. R. 352

(consultative examiner, Dr. Howard Tedoff, Ph.D. found Plaintiff was capable of traveling alone,

living alone, and maintaining her personal grooming and hygiene); 451 (Plaintiff's FEGS

evaluation noting Plaintiff's ability to live alone). Although Dr. Friedman noted that the

variability in the mental status findings is not necessarily unusual, R. 89, and that these conflicts

may ultimately be consistent with Plaintiff's depression and psychotic disorder, the Court cannot

rule accordingly without a proper evaluation of the medical opinion evidence — a job which is

solely the province of the ALJ. *See Lesterhuis*, 805 F.3d at 87; *Veino v. Barnhart*, 312 F.3d 378,

588 (2d Cir. 2002).

The record before the ALJ did not contain evidence that would unequivocally support a

finding that Plaintiff was disabled. *Cage*, 692 F.3d at 112; *Veino*, 312 F.3d at 588. The record

instead reflects conflicting evidence that warrants resolution through further administrative

proceedings. Accordingly, this case will be remanded for additional administrative proceedings

to properly evaluate the treating physician's medical opinions and to resolve inconsistencies in

the record.

### C. A different ALJ

Plaintiff argues that a remand for administrative proceedings would be "pointless"

because the ALJ committed "numerous errors of law," and made a "mockery of due process" by,

among other things, bullying "[Plaintiff] about her inability to remember the date she stopped

working, or to remember the amount that she earned babysitting despite overwhelming evidence of a severe memory impairment, possibly dementia." Pl. Mem. at 21-22. The Court agrees to the extent that the case will be remanded to a different ALJ.

Although the selection of a new ALJ on remand is considered to be within the discretion of the Commissioner of the Social Security Administration, *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 222 (E.D.N.Y. 1998), 20 C.F.R. § 404.940 provides that "an administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party ..." In such a situation, the Court of Appeals as well as district courts in this circuit have directed the Commissioner to remand the case to a different ALJ. *See Kolodnay v. Schweiker*, 680 F.2d 878, 880 (2d Cir. 1982) (appropriate to remand to a different ALJ); *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004) (remand to a different ALJ appropriate "when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process"); *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 222 (E.D.N.Y. 1998) (remand to a new ALJ appropriate where the ALJ made insensitive comments to Plaintiff and mischaracterized and misunderstood the evidence). These courts have considered the following factors to determine whether to direct the Commissioner to remand to a different ALJ: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party. *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004). The ALJ here manifested an inappropriate hostility towards Plaintiff, refused to consider portions of the testimony favorable to Plaintiff, and did not weigh or evaluate most medical opinion evidence because those

physicians had relied in any part on Plaintiff's subjective complaints. R. 21-25. The ALJ's

conduct warrants remand to a new ALJ.

### 1. Inappropriate hostility towards Plaintiff

The ALJ's hostility towards Plaintiff is apparent from the outset of Plaintiff's first

hearing. R. 41-72. On the second page of Plaintiff's testimony, the ALJ expressed exasperation

at Plaintiff for failing to remember how much she was paid for babysitting more than two years

earlier.

> Q. How much did they pay you an hour?
> A. I, I don't think I can answer that one.
> Q. Well, how much did you get paid for God's sake?

R. 47. This degree of frustration is surprising given that Plaintiff's claimed mental impairments

included concentration issues, R. 296, hallucinations, R. 294, and early onset dementia. R. 482.

Shortly thereafter, the ALJ expressed his distrust of Plaintiff's income tax returns because

of his experience reviewing other claimant's income tax returns:

> Let's face it is that the reality is you have to, you have to – a good proportion of
> people come before me and have this self-employment income frankly do not have
> the self-employment income or they don't have it in their – in the amounts that they
> report. They, they do it for the earned income tax credit. This is well-known that
> I've known it for 13 years. Well, I don't want to say if I've known it for 13 years,
> but I've known it probably at least more than ten years. This is not a new
> phenomenon.

R. 51. After Plaintiff's counsel explained that there were a variety of reasons, including

the possibility of some type of bonus, that could explain why Plaintiff had the same income

for two years in a row, even though she had stopped working in September of the second

year, the ALJ responded, "Babysitters in the Bronx do not get bonuses, Counsel" … "I was

trying to discern what the truth is, Counsel, but I'm not getting any straight answers. That

may be because you're – it may be because your client is unable to and maybe she's

suffering from memory problems, I'm not saying she's not.  However, I do have a right to

ask these questions.  I have a right to wonder about these things, to be a little skeptical

about it.  The fact that she may have gotten a bonus, well we're not – you know, the Bronx

is not Wall Street."  R. 54-55.  Such statements suggest that the ALJ may have relied on

stereotypes and experiences with other claimants instead of conducting the detached

evaluation of record evidence that the Social Security Regulations contemplate.

### 2.   The ALJ's Medical Expertise

The record shows that the ALJ refused to consider portions of the testimony favorable to

Plaintiff.  Even though there were three psychiatrist reports in the record with evidence of

Plaintiff's visual hallucinations, the ALJ believed that Plaintiff's hallucination of her dead

mother during the administrative proceeding was fabricated and directed Plaintiff to attend

another psychiatric examination.  R. 59-61.  When Plaintiff's counsel reminded the ALJ that

there were already three different psychiatrists' reports in the record, the ALJ responded:

> ALJ:   *The only – there's only one opinion that counts at the end of the day –*
> ATTY: I know but –
> ALJ:   *-- and that's mine.*
> ATTY: But they are doctors.  They are psychiatrists, three of them.

R. 59-61 (emphasis added).  This is a "clearly apparent refusal to consider portions of the

testimony or evidence favorable to a party."  *Sutherland v. Barnhart*, 322 F. Supp. 2d 282,

292 (E.D.N.Y. 2004).

The ALJ also manifested his refusal to weigh evidence with impartiality by using his own

medical judgment instead of relying on the medical expert opinions in the record.  Despite the

medical opinions in the record discussing Plaintiff's hallucinations, the ALJ insisted there had to

be a physical cause supporting the validity of Plaintiff's symptoms.  "You would think if

somebody came [sic] was having auditory hallucinations they would, they would – I mean, just –

this just may be the state of care but certainly you would think that somebody would have sent her to – would have tried to find out if there's something physical causing it. I don't know, maybe they're so -- used to it around here…" R. 64. The ALJ later said, "I don't understand if she's really having all these problems, why they haven't sent her for – to a neurologist to find out if there's some physical cause for that." R. 69. These comments suggest that the ALJ had unilaterally, without support from the medical record, determined that Plaintiff's hallucinations were suspect unless they had some physical cause. *Balsamo v. Chater*, 140 F.3d 75, 81 (2d Cir. 1998) ("While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him.") (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *Rosa v. Callahan*, 168 F.3d at 79 (same)). By imposing this medically unfounded requirement, the ALJ improperly engaged in his own evaluation of the medical findings, refused to consider portions of the evidence favorable to Plaintiff, and failed to consider the evidence impartially.[7]

### 3.  Manipulation of Medical Opinion Testimony

The ALJ again demonstrated his refusal to impartially weigh the evidence when he

---

[7]      The ALJ's approach to the medical evidence suggesting Plaintiff had symptoms of early onset dementia followed a similar pattern. In an exchange with the Medical Expert, the ALJ posited that if Plaintiff really had early onset dementia, she would have been sent to a neurologist and that the absence of such a referral suggested that her physicians must not have seen any symptoms of dementia. R. 99-100 ("[ALJ] Q: Does the fact that they didn't send her to a neurologist mean that they didn't see signs of dementia? [Medical Expert] A: I guess so. Q: Okay. I mean that's the way it's supposed to work anyway… But still you would go to a neurologist and see if there's a physical cause for this or – A: Well, I'm not exactly sure. A lot of times dementia is considered like arthritis, why bother, you know, going through the diagnostic tests and stuff like that… it indicates confusion in the record. I don't know what to make of it beyond that.").

pushed the Medical Expert, Dr. Friedman, to testify solely based on Plaintiff's treating psychiatrist's treatment notes.  Since Plaintiff's psychiatrist's treatment notes were among the only sources of evidence that supported the ALJ's rejection of Plaintiff's disability claim, the ALJ apparently concluded that Plaintiff's treating psychiatrist's treatment notes were the only reliable source of evidence.

When the court-appointed Medical Expert, Dr. Michael Friedman, stated that Plaintiff's correct diagnosis was major depressive disorder with psychotic features, and cognitive disorder not otherwise specified, the ALJ demanded that the Medical Expert explain why he had included cognitive disorder.  R. 97.  The Medical Expert explained, "I put that in there because one of the doctors said that she's suffering from, you know, early signs of dementia."  R. 97.  After directing the Medical Expert to focus exclusively on the treating notes, the ALJ was able to get the Medical Expert to concede "Maybe not in those, maybe not in those notes.  So major depressive disorder with psychotic features" but "I do think that the notes justify cognitive disorder, you know, not otherwise specified.  It may not be in those particular notes, but they are saying that she's having difficulty remembering things…"  R. 97.  Similarly, when the Medical Expert cited support for his opinion of Plaintiff's work limitations, the ALJ dismissed the Medical Expert's opinion because it relied on the Consultative Examiner's report instead of the medical treatment notes that the ALJ wanted him to rely on.  "No, I'm not talking about the [Consultative Examiner] now.  The [Consultative Examiner] is when somebody – I mean there's pluses and minuses, but [Consultative Examiner] is when somebody is going for, is going for disability."  R. 98.  It appears from the record that the ALJ did not want to hear evidence that would call into doubt his own skeptical opinion of Plaintiff's complaints.

These episodes make evident that the ALJ approached Plaintiff and her counsel with hostility.  Coupled with the ALJ's failure in his written decision to properly evaluate the evidence, this record gives rise to serious concerns about the fundamental fairness of the proceedings, and provides a clear indication that the ALJ would not apply the appropriate legal standard on remand.  Therefore, remand to a new ALJ is appropriate.

## VI.    CONCLUSION

For the foregoing reasons, Defendant's motion is **GRANTED,** and Plaintiff's cross motion is **DENIED.**  The Court remands this case for further administrative proceedings and directs the Commissioner to assign the remand to a different ALJ.

Dated: March 24, 2017
       White Plains, New York

SO ORDERED

Paul E. Davison, U.S.M.J.